## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA – ERIE

| | | |
|---|---|---|
| Gary L. Richardson, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1: 10 cv _*275*_ |
| | ) | **JURY TRIAL DEMANDED** |
| Crawford County Correctional Facility, | ) | |
| Warden Tim L. Lewis, individually and | ) | |
| in his official capacity as Warden of | ) | |
| Crawford County Correctional Facility, | ) | |
| Deputy Warden Kenneth Saulsbery, | ) | |
| individually and in his official capacity | ) | |
| as Deputy Warden of Crawford County | ) | |
| Correctional Facility, And C.O. | ) | |
| Schrekengost, officer of Crawford | ) | |
| County Correctional Facility, Lt. Shinko, | ) | |
| Also Officer at said Facility, Interim | ) | |
| Healthcare of Erie, Inc. , | ) | |
| Nurse Deanna Halbrook, Nurse John Doe ) | | |
| 1 and Nurse Jane Doe 1, | ) | |
| And Morris W. Waid, | ) | |
| Jack M. Preston, and C. Sherman Allen, | ) | |
| all individually and in their official | ) | |
| capacities as Commissioners of | ) | |
| Crawford County and Board Members of | ) | |
| Said Correctional Facility, Dr. Rick | ) | |
| Moran, **each Individual** | ) | |
| **Defendant here captioned being sued** | ) | |
| **Both individually and in his or her** | ) | |
| **Official** | ) | |
| **Capacity,** | ) | |
| Defendants | ) | |

## COMPLAINT

AND NOW comes Plaintiff, Gary L. Richardson, by and through his attorney, Bonnie L.

Kift, Law Office of Bonnie L. Kift, to make and file his Complaint at this caption. In so doing,

he avers the following:

**Introduction**

1. This is a civil rights case filed pursuant to 42 U.S.C. Section 1983 by Gary L. Richardson who is the above-named Plaintiff.

2. At the times of the events complained herein, Plaintiff was incarcerated before trial at the Crawford County Correctional Facility and was released from said Facility before the filing of this Complaint.

3. Mr. Richardson complains negligence and violations of his rights, via violations of the United States constitution, while so detained to adequate medical care and treatment and to conditions of confinement that are not unduly harsh or punitive and to freedom from undue restraint and/or excessive force.

**Jurisdictional and Venue Statement**

4. This Court has jurisdiction over this matter pursuant 28 U.S.C. Section 1331. This action arises as a result of the implementation of 42 U.S.C. Section 1983 and is pursuant thereto.

5. Venue is proper in the Western District of Pennsylvania which is that district where the Plaintiff, the Crawford County Correctional Facility and Interim Healthcare of Erie are located and where the events complained occurred.

**The Parties**

6. Plaintiff is Gary L. Richardson who is a United States citizen, an adult individual residing at 241212 North Center Road, Springboro, Pennsylvania, 16435 and, as such, complains here and, as such, he is also a resident of Crawford County, Pennsylvania.

7.  Defendant, Crawford County Correctional Facility, hereinafter "CCCF" or simply "the Facility", is a correctional county- of -Pennsylvania facility which houses inmates, both pre-trial detainees and convicted prisoners, and has its principal and office location of 2100 Independence Drive, Saegertown, PA 16433. It is the Correctional Facility at which Plaintiff was housed at all times complained previous to his release in mid-January, 2009.

8.  At all times relevant, Defendant Crawford County Correctional Facility, CCCF or the Facility hereafter, acted through its agents, servants, independent contractors and/or employees.

9.  Defendant, Warden Tim L. Lewis, is an adult individual who at all times complained was and remains the Warden at CCCF, his principal address being the Facility business address of 2100 Independence Drive, Saegertown, PA 16433; as Warden, said Defendant was at all times complained the final decision maker within said CCCF; Warden Lewis is sued both in his individual and in his official capacity.

10. At all times relevant to the complained events, Warden Lewis was warden at the Facility and was, as such, charged with the control and supervision of all nursing staff, all guards inclusive but not limited to all ranks of corrections officers and others, and all other employees and /or agents acting within the Facility, he being thus responsible for their employment and staffing, their education and training, their supervision, and the implementation and establishment of CCCF policies, practices and procedures.

3

11. At all times relevant to the here Plaintiff- complained events, Warden Lewis as warden at the Facility was responsible for the health and safety of all inmates and was duty-bound to protect them and to make certain that the inmates' medical needs were being met by all staff attending them and that, should care outside the facility be required, it would be also engaged.

12. Defendant, Deputy Warden Kenneth Saulsbery, is an adult individual who at all times complained served as Deputy Warden and as a principal decision maker at CCCF with his business address also at the Facility's location of 2100 Independence Drive, Saegertown, PA 16433; Deputy Warden Saulsbery is sued both in his individual and in his official capacity.

13. Defendant Deputy Warden Kenneth Saulsbery, as Deputy Warden, was at all times relevant to the events here complained, duty-bound to attend to the employment and staffing of all employees and/or agents, inclusive of nurses and guards and corrections officers or other officers of varying rank, to supervise their education and training, their supervision, and the implementation and establishment of policies, practices and procedures as to them, and/or to do all such acts in the absence of the Warden.

14. At all times relevant to the here Plaintiff- complained events, Deputy Warden Kenneth Saulsbery, as deputy warden at the Facility was responsible for the health and safety of all inmates and was duty-bound to protect them and to make certain that the inmates' medical needs were being met by any and all staff attending them and, should care outside the facility be required, that it would be also engaged.

15. Defendant, CO Schrechengost, is an adult individual who was, at all times complained, a corrections officer at CCCF, with its same mailing address; she is sued both in her individual and in her official capacity as a corrections officer of said Facility.

16. Defendant, Lt. Shinko, is an adult individual who was, at all times complained, a lieutenant officer at CCCF, with its same mailing address; he is sued both in his individual and in his official capacity as a lieutenant officer of said Facility

17. Defendant, Dr. Rick Moran, who works as the CCCF physician and who in that capacity and/or any other designated by the Facility, directs medical affairs and the conduct of medical practices and policies and procedures at CCCF, he being also of said address but also of another not presently known and he being the only physician addressing, as needed, the inmate patients in need of a medical physician's examination or other attention, inclusive of the prescribing of prescriptions at the Facility.

18. Defendant is Interim Healthcare of Erie, Inc., which has its principal office location at 16269 Conneaut Lake Road, Meadville, Pennsylvania 16335; it is a Pennsylvania Corporation trading and doing business in Pennsylvania as Interim Healthcare with an office location also apparently at 1789 South Braddock Avenue, Pittsburgh, Pennsylvania 15218.

19. Defendant Interim Healthcare of Erie, Inc. was at all times complained under contract with CCCF and supplied nursing staff and services to the Facility for the purpose of ensuring the availability and provision of medical services and care there and thus said Defendant and its employees, agents and other subordinates

who staffed the Facility were the agents, servants, employees and/or other subordinates of the local state agency, Defendant Crawford County and the Facility.

20. At all times complained and relevant, Defendant Interim Healthcare of Erie, Inc acted through its agents, servants and/or employees, including its nurse, Defendant Nurse Halbrook and another Unnamed Defendant, Nurse John Doe 1 or Jane Doe 1.

21. At all times relevant, Defendant Interim Healthcare of Erie, Inc. was immediately and directly responsible for the availability and provision of medical services at the Crawford County Correctional Facility and the maintenance of an infirmary within the Facility. Therefore, said Defendant was immediately and directly responsible for the health and safety of the Facility's inmates and the availability and provision of adequate medical treatment to its inmates.

22. At all times relevant to the complained facts, Defendant Interim Healthcare of Erie, Inc, were in auspicious legal authority and represented the legal authority and official policy of Crawford County and the Facility with regard to the health and safety of its inmates and, as such, acted under color of state law relevant to the availability and provision of adequate medical care and treatment.

23. Alternatively, Defendant Interim Healthcare of Erie, Inc. acted independently of Crawford County and the Facility.

24. Defendant, Nurse Deanna Halbrook, at all times relevant, was an adult individual who was employed by, or worked as an agent of Defendant Interim Healthcare of Erie, Inc., at the Facility and, as such, she was one of the nurses with whom

6

Plaintiff had to seek and did seek care at the Facility and was, in fact, thus also a state actor. She is sued both in her individual and any official capacity she may claim at the Facility.

25. Defendant, Nurse John or Jane Doe 1, at all times relevant, was an adult individual who was employed by, or worked as an agent of Defendant Interim Healthcare of Erie, Inc., at the Facility and, as such, s/he was one of the nurses from whom Plaintiff had to seek and did seek care at the Facility and was, in fact, thus also a state actor. S/he is sued both in her individual and any official capacity she may claim at the Facility

26. Defendants Morris W. Waid, Jack M. Preston, and C. Sherman Allen, are at all times complained, Commissioners of Crawford County and all are here sued both individually and in their official capacities as  Commissioners of Crawford County and Board Members of said CCCF.

27. 27.At all times relevant to the events complained, Defendants Lewis, Preston, Waid and Allen were responsible for creating and executing policies to ensure the safety, health, availability, and provision of adequate medical care and treatment to all inmates at the Crawford County Correctional Facility and were responsible for formulating and implementing nurse, guard and other staff procedures and policies to provide for the safety, health, availability, and provision of adequate medical care  and treatment to all inmates at the Crawford County Correctional Facility.

28. Said Defendants Warden and Board Members and Commissioners, respectively, represented the legal authority and official policy of Crawford County and the

Correctional Facility, pertaining to nurse, guard and other staff actions, duties, responsibilities, training, procedures and policies, and practices regarding health, safety, availability and provision of adequate medical treatment of inmates at the Facility. As such, they acted each as under color of state law and are state actors here.

29. At all times relevant, Defendants Interim Healthcare of Erie, Inc., and Wardens Lewis and Saulsbery, and Nurse Halbrook and Dr. Moran and Commissioners Waid, Preston and Allen were the agents, servants, independent contractors and/or employees of the Facility and in their roles as such functioned as an ostensible representation of a state agency and were thus state actors.

30. By virtue of the various activities of the Defendants Interim Healthcare of Erie, Inc., and Wardens Lewis and Saulsbery, and Nurse Halbrook and Dr. Moran and Commissioners Waid, Preston and Allen, in detaining, incarcerating, protecting and rehabilitating inmates at the Facility, each stated Defendant expressly assumed the duties of maintaining the health and safety of inmates in regard to the provision and availability of adequate medical care at the Facility.

## Preliminary Statement of Facts

31. Plaintiff here incorporates at length and in full detail all preceding paragraphs.

32. Plaintiff Gary L. Richardson was incarcerated on November 18, 2008 at the Crawford County Correctional Facility upon being advised of criminal charges but previous to any trial or preliminary hearing whatsoever.

33. As so incarcerated, Plaintiff Richardson is under the law identified as a pretrial detainee for all purposes and events complained here and is entitled to application of the law as it addresses detainees.

34. Plaintiff Richardson was released from Crawford County Correctional Facility previous to the filing of this complaint and his case here filed is thus not addressed by the Prison Litigation Reform Act, PLRA, which does not in any manner operate to limit his action.

35. Previous to his incarceration, Plaintiff Richardson had been gainfully employed for many years as a bus driver for disabled school children and can no longer drive bus subsequent to and as a direct and proximate result of his injuries suffered while incarcerated at CCCF.

36. Plaintiff at the time of the occurrences or failures herein complained was a pre-trial detainee.

37. As such, Plaintiff was entitled under the Due Process Clause 14th Amendment to be free of conduct at the Crawford County Correctional Facility which would punish or penalize  him by not providing his prescribed medications and/or by refusing to treat and not treating his serious medical needs.

38. Upon Plaintiff's entry into booking on the entry date of November 18, 2008, he advised that he required certain prescription medications and identified them for personnel.

39. At this time, his said medications were, in fact, provided to Officer Shinko and another person at booking at Crawford County Correctional Facility by a third

person, a state trooper accompanying Plaintiff to the Facility, who also repeated instructions as those by Plaintiff to the both attendees at booking.

40. Officer Shinko at booking responded by jeeringly laughing, upon accepting the medications, particularly Xanax, and saying that "You'll never see these again, " among other statements.

41. Said Officer Shinko was an officer of Defendant Crawford County Correctional Facility at booking the date of November 18, 2008 who was also responsible for relating intake information to the appropriate departments of said Facility, including medical.

42. Plaintiff Richardson did not then receive his prescribed medications and began to suffer medical symptoms inclusive of general weakness and dizziness, staggering gait, and headache, which got increasingly worse over the next few days, he at all times requesting then not only that said prescriptions be provided but that he also receive medical care and at least the last two days before his hospitalization that he be taken to the hospital for badly needed medical care.

43. To Plaintiff's requests to be taken to the hospital, Nurse Halbrook responded that the only way he would be taken to the hospital was if he were, in effect, dead or suffering a heart attack.

44. Defendant Nurse Halbrook reportedly routinely apprised inmates requesting that they be taken to the hospital as she did Plaintiff when had he several times; to wit, that they could go to the hospital only two ways, either because they're in cardiac arrest "or in a body bag".

*45.* And, in fact, the prescribed medications were not provided to Plaintiff on November 18, 2008 nor were they provided through November 22, 2008, but were instead refused Plaintiff by Nurse Halbrook, despite Plaintiff's repeated requests from the date of November 18, 2008 through November 22, 2008 to others of the Defendant Facility and particularly to Nurse Deanna Halbrook for them.

46. Being again unable to acquire treatment or his medications because of Nurse Halbrook's refusals, Plaintiff spoke also to a Facility counselor to advise her of the need for his medications but also that his symptoms were worsening and that he had related this information to Nurse Halbrook who refused to assist.

47. On or about October 20, 2008, said counselor, sympathetic to Plaintiff's medical needs, advised him to sign up for "Sick Call" on or about November 20 or November 21, 2008 in order that Nurse Holbrook would not be in attendance then and another nurse would be in attendance who might attend to his symptoms and provide his medications the following day.

48. Plaintiff had signed up for sick call daily but did _also_ again sign up for "sick call" on the date of November 20 or 21, 2008 as he had been so instructed by the counselor.

49. Plaintiff, did however on the date of November 22, 2008 he suffer a seizure, fell out of consciousness and to the cement floor as a direct and proximate result of the seizure, injuring his head, neck, shoulders and right arm and more generally other areas of his person.

11

50. Plaintiff never saw Dr. Moran or any other physician while at the Facility during this interim of his stay, and certainly never before his seizure, though he had signed up daily for sick call, advised daily of symptoms and was in physical distress that had been worsening daily.

51. Plaintiff was taken to the hospital at Meadville Medical Care on the date of his seizure on November 22, 2008.

52. Plaintiff was hydrated and presumably otherwise nourished intravenously at the Meadville Medical Center and placed on intravenous drugs to treat his seizure; he being not considered stable for release until an approximate seven (7.0) hours subsequent, the attending physician requesting also of the guards whether Plaintiff could stay overnight for further observation which they refused.

53. Medical personnel at the Meadville Medical Care hospital also advised the Facility guards that the Facility's failure to provide Xanax during the interim between his entry on November 18, 2008 and the seizure's occurrence on November 22, 2008 had caused the seizure.

54. The risk of suffering a seizure is a substantial and serious risk of harm when a Plaintiff's prescription drugs are discontinued abruptly, particularly when Xanax is abruptly discontinued as it had been in this case, Plaintiff having taken it daily in the prescribed dosage for many years.

55. The risk of suffering serious physical harm as a result of a fall due to any seizure is a substantial and serious risk.

56. The symptoms with which Plaintiff had presented on the several days before the November 22, 2010 seizure were substantial, and in and of themselves warned the

nurses and staff at the Facility and, for that matter, warned any lay person at the Facility that Plaintiff was presenting with a serious medical need requiring medical attention and treatment.

57. Said symptoms were, in fact, continually and purposefully ignored by any and all staff, inclusive particularly of the medical staff on duty during this interim of November 18, 2008 through November 22, 2008 and, of said staff, more particularly by Dr. Moran and Nurse Halbrook and Nurse John Doe 1 or Jane Doe 1.

58. Subsequent the date of November 22, 2008, Plaintiff was in severe pain as a direct and proximate result of the harm occasioned as result of his seizure and fall on said date and in need of both physical therapy and Dr. Moran's attention and diagnosis and additional referrals and surgery to repair his right arm and shoulder.

59. Despite Plaintiff having sought assistance with the pain and an inability to maneuver his right arm or to support weight in any amount with it and the following, Plaintiff was not provided his earlier prescribed drug, Xanax, nor physical therapy nor the attention of Dr. Moran or any other outside physician though Dr. Moran had advised a Dr. Richards, Plaintiff's physician, that Plaintiff had been placed on said drug subsequent the complained events of November 22, 2008 and Plaintiff's admission to the hospital for a seizure and fall occurring as a direct and proximate result of the refusal of CCCF to provide Xanax.

60. As point of fact, Dr. Moran during Plaintiff Richardson's detention at the Facility, never did make or conduct an appointment with Plaintiff.

13

61. Despite Plaintiff's so requesting, Nurse Halbrook replied that no physical therapy
    was offered at the Facility and that therefore Plaintiff could have none; she also
    refused to further refer Plaintiff to an outside physician or to seek the Facility's
    Defendant Dr. Moran, or alternatively, said doctor chose not to apply his attention
    in order to provide additional pain relievers or otherwise treat Plaintiff's pain.

62. As a direct and proximate result of Defendants' acts of refusal and deliberate
    indifference or recklessness toward his serious medical needs, to provide Plaintiff
    his prescription drugs, to treat for his complained symptoms, to transport him to
    the hospital when the serious life-threatening symptoms as he had complained
    arose, Plaintiff has suffered substantial and permanent harms, he having seized for
    the first time, his right arm being badly mutilated and impaired and not amenable
    to surgical repair, his brain having suffered a trauma, his neck and shoulders
    being structurally also harmed, the medication dilantin, in efforts to control or
    eliminate seizures in the future, being a medication he must continue to take and
    for which he had earlier than his incarceration, at least, had no need to take, a
    constantly present while incarcerated fear and apprehension due to his being
    incarcerated but without control to acquire medical assistance or medication for
    his serious medical need, psychological injury then and thereafter for which he
    treats, the loss of the availability of defending against the charges brought against
    him but instead pleading to what he did not do because he was so very
    apprehensive and unable to acquire medical treatment while incarcerated and, by
    pleading, could thereby otherwise be released, and an inability to pursue his

14

employment as a bus driver for disabled school children as a result of the

structural harm done and also sundry other substantial and permanent harms.

### COUNT ONE – Section 1983 and 14th Amendment Violation
Claimed against Defendants CCCF, Wardens Lewis and Saulsbery, Interim Healthcare of Erie, Inc. , Nurse Deanna Holbrook, Nurse John Doe 1 or Nurse Jane Doe 1 and Dr. Richard Moran are Violations of Plaintiff's Fourteenth Amendment Rights by Refusal and /or Purposeful Failure to Provide Prescribed Medications, and to Treat Plaintiff and to Timely Take Plaintiff to Emergency Department and to provide him with medications or treatment thereafter

63. Plaintiff here incorporates all above paragraphs 1-62 at length as though set forth

in full detail here.

64. Plaintiff is a pretrial detainee at all times relevant to his events here complained.

65. Plaintiff had a serious medical need to receive at his entry and throughout any

stay there his MD-prescribed Xanax and other medications also MD-prescribed.

66. Defendants above, inclusive of CCF, its Wardens, its Correction Officers, Interim

Healthcare of Erie, Inc., its Nurses inclusive of named-Defendant Nurse

Halbrook, and Defendant Dr. Moran had a responsibility, as state actors, to

provide Plaintiff with adequate medical care and treatment so as not to violate

either Amendment 8 or Amendment 14 of the United States Constitution.

67. Said state actors did purposefully fail and/or refuse to provide such

Treatment by the preceding acts complained.

68. Said state actors acted with deliberate indifference or recklessness to Plaintiff's

serious medical needs, particularly  Defendants Interim Healthcare of Erie, Inc.,

Defendant Nurse Deanna Halbrook, and Defendant Dr. Moran, in so recklessly failing or refusing to act to treat or to medicate or to transport Plaintiff to the hospital in timely fashion previous to the date of November 22, 2008 before his seizure, they having continually and repeatedly refused to provide medications that had been prescribed for him, they having denied him treatment, and they having denied him assistance and transport into a medical hospital.

69. Defendants' acts of refusal and deliberate indifference or recklessness to Plaintiff's serious medical needs are therefore the following but not so limited:

a) to provide Plaintiff his prescription drugs and pain relievers;

b) to treat him for his complained symptoms before and after the incident of his first seizure which was caused directly and proximately by refusing him his prescribed Xanax;

c) to transport him to the hospital when the serious life-threatening symptoms as he had reported arose before and on November 22, 2008; ,

d) to follow his return from the hospital on November 22, 2008 with appropriate and required care for the purposes of assessing his pain and treating it, assessing his injury to his right arm and other structural injuries, said arm being no longer amenable to surgical repair, the window during which such repair could have been made having been terminated during his stay at CCCF while he was not referred for an assessment for surgery ;

e) to refer him to either Dr. Moran or an outside physician or both; and failing to provide him his Xanax subsequent the events of November 22, 2008;

f) or, alternatively, though referred never saw Dr. Moran or any other physcian;

g) and, to do all other acts as would be important to his care to prevent the violation of his 14th Amendment rights to adequate medical care and treatment and/or his 8th Amendment rights to be free from cruel and unusual punishment.

70. As a direct and proximate result of said intentional refusals and deliberate indifference or recklessness, Plaintiff has suffered <u>substantial and permanent</u> harms of the following nature:

a) He suffered his first seizure;

b) His right arm was permanently and substantially mutilated and impaired and is no longer amenable to surgical repair, the window during which such repair could have been made having been terminated during his stay at CCCF;

c) His brain has suffered a trauma and his neck and shoulders are structurally also harmed;

d) He has need of continuing the medication dilantin, in efforts to control or eliminate seizures in the future, it being a medication he must continue to take and for which he had earlier than his incarceration, at least, had no need to take,

e) He suffered a constantly present fear and apprehension due to his being incarcerated but without control to acquire needed medical assistance or medication for his serious medical need

f) He suffered the loss of the availability of defending against the charges brought against him but instead was forced to plead guilty to what he did not do because he was so very apprehensive and unable to acquire medical

treatment while incarcerated and, by pleading, could thereby otherwise be immediately released;

g) He suffered and continues to suffer an inability to pursue his employment as a bus driver for disabled school children as a result of the structural harm done; and,

h) He has suffered other substantial and permanent harms which medical records should assist to reveal.

71. Plaintiff therefore claims damages of the following genres, these being in excess in the aggregate or any portion thereof, of the jurisdictional amount:

a) Special Damages;

b) General Damages;

c) Lost Wages, both past and future, as well as

d) Loss of Reputation and self esteem;

e) Damages for emotional Injuries;

f) Punitive Damages; and,

a) Attorney Fees, Costs and Expenses, per said Count below so identified and here incorporated

- All inasmuch as Plaintiff Richardson complains here violations of his Constitutional right via the Fourteenth Amendment of the United States Constitution, to that degree necessary to support his Section 1983 action here complained, to adequate medical care and treatment while detained at CCCF, all acts at this Count One complained having occurred as a result of deliberate indifference or recklessness to his said right and comprising, in their aggregate or

18

as a combination of them or each separately, cruel and unusual punishment or something akin to lesser standards than "deliberate indifference" or "recklessness" and "cruel and unusual punishment" as may be permitted under the development of law regarding pre-trial detainees.

72. Alternatively, Plaintiff therefore claims damages of the following genres, these being in excess in the aggregate or any portion thereof of the jurisdictional amount:

a) Special Damages;

b) General Compensatory Damages, inclusive of Pain and Suffering;

c) Lost Wages, both past and future, as well as

d) Loss of Reputation and self esteem;

e) Damages due to emotional injuries;

f) Punitive Damages; and,

g) Attorney Fees, Costs and Expenses, per said Count below so identified and here incorporated,

- All inasmuch as Plaintiff Richardson complains here violations of his Constitutional right via the Eighth Amendment of the United States Constitution, to be free from cruel and unusual punishment, all acts at this Count One complained having occurred as a result of deliberate indifference or recklessness to his said right and comprising, as evidenced by the manner in which he had at all times been refused treatment, in their aggregate or a combination of them or each separately, cruel and unusual punishment.

**WHEREFORE PLAINTIFF** respectfully requests that judgment be entered against the Defendants, including a declaration that Defendants violated Plaintiff Richardson's Constitutional rights, compensatory, inclusive of lost wages, past and future, any other special damages, and punitive damages against each Defendant, jointly and severally or apportioned otherwise among them, in an amount/s to be determined at trial, along with attorney's fees, costs, expenses and any other relief this Honorable Court deems necessary and proper.


### COUNT TWO: Supervisory Liability

### Claims Against Warden Lewis and Facility Board
### Member Commissioners Waid,_Preston and Allen

73. Plaintiff here incorporates at length all above paragraphs as though set forth in full detail here below.

74. While Plaintiff was in custody at the Facility, he was caused to suffer multiple harms at the hands of its correctional officers, employees and/or agents serving at CCCF as stated above at Count One.

75. The conduct of the correctional officers, employees and/or agents serving as stated above at Count One amounted to deliberate indifference or recklessness to Plaintiff Richardson's serious medical needs and the substantial risks of bodily harm to his person.

76. Their said conducts were and remain the direct and proximate cause of the multitude of harms he has suffered, the conducts acting together and/or singularly

or in any combination but also serially, said harms being identified to a degree within the preceding Paragraph 76.

77. There was no legitimate or satisfactory purpose in the officers, agents or employs so treating the Plaintiff to override his Constitutional protection afforded under either the 14th or 8th Amendment.

78. As aforesaid, but in greater detail in the preceding paragraphs which are also here incorporated, Defendants Warden Lewis and Facility Board Member Commissioners Waid,_Preston and Allen have a responsibility to devise, execute and implement policies and procedures to preserve the safety and health of the Facility inmates, these including procedures to provide adequate medical care and treatment to Plaintiff.

79. Further, it is believed and therefore alleged here that conduct of the Interim Healthcare of Erie, PA and/or its nurses and the Defendant Dr. Moran, here sued as Defendants, has in the past caused the deaths or serious medical injury to inmates recently housed but earlier than Plaintiff's admission to CCCF, a matter placing such supervisory or policy-making persons on notice of there being a substantial risk of serious harms to the inmates should there not be staffing corrections and policy changes.

80. Defendants Warden Lewis and Facility Board Member Commissioners Waid, Preston and Allen authorized, ratified, and/or condoned the policies or customs of not providing Plaintiff's previously prescribed medications to him at his arrival at the Facility and thereafter, of not transporting or otherwise treating Plaintiff under his circumstances, of improperly educating and training employees, agents and

officers to do as they have wrongfully done under these circumstances, and of not following up on his care responsibly after his return from the Meadville Medical Center on November 22, 2008.

81. Alternatively, Warden Lewis and Facility Board Member Commissioners Waid, Preston and Allen observed the serious threats of harm and their potential causes and failed to make corrective changes in policy as would be appropriate and would have assisted Plaintiff under the circumstances, including but not limited to permitting persons such as Plaintiff to be transported to the hospital and medicated according to their own doctors prescriptions.

82. The conduct of Warden Lewis and said Board Members complained at the immediately above Paragraph inured to cause, directly and proximately, the harms accumulating to Plaintiff at Count One.

**WHEREFORE PLAINTIFF** respectfully requests that judgment be entered against the Defendants, including a declaration that Defendants violated Plaintiff Richardson's Constitutional rights, compensatory, inclusive of lost wages, past and future, any other special damages, and punitive damages against each Defendant, jointly and severally or apportioned otherwise among them, in an amount/s to be determined at trial, along with attorney's fees, costs, expenses and any other relief this Honorable Court deems necessary and proper.

**COUNT THREE – Section 1983 and the 14th Amendment Violations as Charged against all Defendants to Plaintiff's Right to be free from Conditions of Confinement that are Excessively Harsh and/or Punitive**

83. Plaintiff here incorporates at length all above paragraphs as though set forth in full detail here below.

84. Plaintiff has a substantial Constitutional right as an inmate at the Facility to be free from conditions of confinement that are excessively harsh and punitive.

85. Shortly after being returned to the Facility subsequent his treatment at the Meadville Medical Center, Plaintiff was placed in the hole and there confined for a full week.

86. Plaintiff had done nothing to be so punished and yet there he remained without the amenities allotted to an inmate within the population at large inasmuch as he was permitted no visitation and was secluded from the prison population while he was yet in need of additional care and treatment inclusive of but not limited to physical therapy.

87. Because Plaintiff had not prompted being so treated but had at all times acted within his rights to so act, and for other good reasons, it is believed and therefore averred here that Plaintiff was so secluded vindictively and maliciously, said seclusion being entirely without just purpose.

88. All Defendants knew at the time, or should have known, that any such confinement would be in violation of Plaintiff's said right and acted to violate said right without reason if not to punish.

89. The CCCF Wardens and the Board Member Defendant Commissioners are also liable for failing to implement a policy or procedure that would guard against the placement of persons in seclusion when they have done no act to cause same.

23

90. CCCF and CCCF Wardens and the Board Member Defendant Commissioners are also liable for failing to implement a policy or procedure that would guard against the placement of persons in seclusion, particularly when they are in need of recovering from medical problems.

91. Interim Healthcare and its Nurses at CCCF, knowing of Plaintiff's requests daily, were also aware that Plaintiff had been placed "in the hole" for a week – secluded from population and activities - and particularly when he was in a medical condition unsound for such placement.

92. Each of the Defendant Wardens, CCCF, Board Member Commissioner Defendants and Interim Healthcare Defendants acquiesced in such decision and may have, in the alternative, participated in it.

93. Plaintiff as a direct and proximate result of the actions of all Defendants here was caused to suffer stiffness and other physical discomforts and emotional harm.


**WHEREFORE PLAINTIFF** respectfully requests that judgment be entered against the Defendants, including a declaration that Defendants violated Plaintiff Richardson's Constitutional rights, compensatory, inclusive of lost wages, past and future, any other special damages, and punitive damages against each Defendant, jointly and severally or apportioned otherwise among them, in an amount/s to be determined at trial, along with attorney's fees, costs, expenses and any other relief this Honorable Court deems necessary and proper.


**COUNT FOUR - Section 1983 and 4TH AND 8TH Amendment Violations**

**Charged Against the Defendant C.O. Schrechengost and Against the
Wardens of CCCF in Supervisory Liability**

94. Plaintiff here incorporates at length all above paragraphs as though set forth in
full detail here below.

95. Plaintiff has a substantial Constitutional right as an inmate at the Facility to be
free from excessive force under the 4th (and 8th) Amendment of the United States
Constitution.

96. Subsequent the events complained and occurring on November 22, 2008, while
Plaintiff was to be recovering, Corrections Officer Schrekengost did with
maliciousness and purpose slam a Facility steel door on Plaintiff's right arm, with
knowledge that it had earlier been injured, the Plaintiff and the said Corrections
Officer having been addressing a matter unsatisfactory to her at the time of the
event.

97. Plaintiff, though not required for purposes, here did file reports by way of
requests and grievances against C.O. Schrekengost.

98. Said grievances were reported to him as having been determined to be unfounded
which Plaintiff appealed.

99. Plaintiff was released in mid-January, 2009 from the Facility and therefore made
no additional appeal to the determination of said grievance, or, if he made such an
appeal, was released from the Facility before able to further follow-up on  the
decision.

100.       As a direct and proximate result of such conduct by C.O. Schrekengost,
Plaintiff had indeed suffered additional harm to his said arm.

101.     Warden Lewis and Deputy Warden Saulsbery have been made aware and have had actual knowledge of such physically vindictive conduct of Corrections Officer Schrekengost in the past previous to the complained events [and since], of its substantial and dangerous propensities to the safety and health of the inmates and yet have acquiesced in same, doing nothing to correct her said conducts.

102.     Both said Wardens have a duty to provide for the safety and health of the Facility inmates as aforementioned and, by failing to act to correct Officer Schrekengost, have not fulfilled that duty but instead have breached it.

103.     Plaintiff is directly and proximately harmed by the breach of the Wardens, as if by Schrekengost herself, for their acquiescence to her said vindictive conduct and excessively forceful conduct.


**WHEREFORE PLAINTIFF** respectfully requests that judgment be entered against the Defendants, including a declaration that Defendants violated Plaintiff Richardson's Constitutional rights, compensatory, inclusive of lost wages, past and future, any other special damages, and punitive damages against each Defendant, jointly and severally or apportioned otherwise among them, in an amount/s to be determined at trial, along with attorney's fees, costs, expenses and any other relief this Honorable Court deems necessary and proper.


**COUNT FIVE:**
**ATTORNEY FEES, COSTS AND EXPENSES VIA 42 U.S.C. SECTION 1988**

104.     Plaintiff Gary l. Richardson has engaged the attorney services of Bonnie L. Kift by contract whereby he has contracted for her services at the hourly wage of $ 200 per hour and all reasonable costs and expenses.

105.     Plaintiff's counsel has prepared and filed this, Plaintiff's Complaint, upon the terms of said contract and will, upon said terms continue the pursuit of said action.

106.     Plaintiff's undersigned counsel is an attorney admitted to the Supreme Court of Pennsylvania and to the United States Supreme Court and licensed to practice law within all courts of the Commonwealth of Pennsylvania and before this and other United States district courts.

107.     42 U.S.C. Section 1988 provides that a prevailing party shall be entitled to bring a claim for the fees, costs and expenses of his lawyer in the pursuit of a Section 1983 action.

108.     By 42 U.S.C. Section 1988, should Plaintiff qualify as a prevailing party, said fees and costs and expenses shall be the liability of all Defendants here to pay, both jointly and severally.


**WHEREFORE PLAINTIFF** respectfully requests that judgment be entered against the Defendants, including a declaration that Defendants violated Plaintiff Richardson's Constitutional rights, compensatory, inclusive of any special damages, and punitive damages against each Defendant, jointly and severally or apportioned otherwise among them, in an amount/s to be determined at trial, along with attorney's

27

fees, costs, expenses and any other relief this Honorable Court deems necessary and proper.

## COUNT SIX – PENDANT STATE TORT CLAIMS OF MEDICAL MALPRACTICE UNDER THE MCARE ACT AS CLAIMED AGAINST NURSE HALBROOK, DR. RICK MORAN AND INTERIM HEALTHCARE OF ERIE, INC.

109.      This Court has jurisdiction over state claims that are pendant.

110.      Plaintiff here incorporates at length all above paragraphs as though set forth in full detail here below.

111.      This pendant state claim arises under all facts above stated inasmuch as they specifically regard medical care or lack thereof, as was/ was not provided to Plaintiff by Defendant Halbrook and any other Nurse John or Jane Doe 1, Dr. Rick Moran and Interim Healthcare of Erie, Inc.

112.      Defendants here acted at least negligently, if not recklessly and in mean spirit and total deliberate disregard for Plaintiff's medical care.

113.      Said Defendants had a duty to provide competent medical care to Plaintiff.

114.      Said acts or nonacts, to wit, to fail to provide Plaintiff's prescribed medication of Xanax, to fail to treat Plaintiff's emergency symptom presentation of staggering, slurring, unsteady gaiting, among other symptoms, days before his seizure, to fail to treat Plaintiff and to timely transport Plaintiff to an Emergency Department before his seizure and to fail to provide Plaintiff with required follow-up care subsequent his discharge from Meadville Medical Care Center when he

finally had seized as his symptoms warned he would were acts in dereliction of the duties owed by these said Defendants.

115.    All said acts – or non- acts - were and are in violation of the standards of practice promulgated for physicians and nursing nationally and within this Commonwealth.

116.    All said acts – or non-acts - were and are the direct and proximate cause of harms to Plaintiff as earlier enumerated at paragraphs 62, 69 and 70.

117.    The Defendant Interim Healthcare of Erie, Inc., under contract with CCCF, had a duty to hire and staff appropriately the nurses it provided to Mr. Richardson's care, to educate and train said nurses, and to supervise said nurses according to said standards of nursing practice, among other duties.

118.    Said Defendant Interim Healthcare of Erie, Inc. had been made aware of problems in the past previous to the events complained here that amounted to sufficient notice and knowledge that changes had to be implemented to correct for problems arising.

119.    However, Defendant Interim Healthcare of Erie, Inc., by doing nothing, acquiesced in said knowledge and as so doing is liable under a theory of Vicarious or Supervisor Liability.

120.    To the extent that said acts – or failures to act – by all the Defendants here named are proved to be intentionally apart from standard practices and in dereliction of duties owed Plaintiff, Plaintiff does also seek Punitive Damages as well as Attorney Fees and costs should the law and this Court permit.

WHEREFORE PLAINTIFF respectfully requests that judgment be entered against the Defendants, including a declaration that Defendants violated Plaintiff Richardson's Constitutional rights, compensatory, inclusive of any special damages, and punitive damages against each Defendant, jointly and severally or apportioned otherwise among them, in an amount/s to be determined at trial, along with attorney's fees, costs, expenses and any other relief this Honorable Court deems necessary and proper.

**JURY TRIAL DEMANDED.**

Respectfully submitted:

_/s/ Bonnie L. Kift_
Bonnie L. Kift  S.Ct. ID #39334
Law Office of Bonnie L. Kift
121 St. Clair Circle
Ligonier, PA 15658
(724) 238 -2410
**Attorney for Plaintiff**