# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY L. RICHARDSON, | ) | |
| Plaintiff, | ) | Civil Action No. 10-275 Erie |
| | ) | |
| v. | ) | District Judge McLaughlin |
| | ) | |
| CRAWFORD COUNTY | ) | |
| CORRECTIONAL FACILITY, et al, | ) | Magistrate Judge Baxter |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.      RECOMMENDATION

It is respectfully recommended that the motion to dismiss filed by Defendants Crawford County Correctional Facility, Wardens Lewis and Saulsbery, Correctional Officer Schrekengost, Lt. Shinko, and Commissioners Waid, Preston and Allen [ECF No. 14] (parts of which were converted into motion for summary judgment) should be granted in part and denied in part, to wit:

-   Motion to dismiss should be granted as to Count I;

-   Motion to dismiss should be granted as to Count II;

-   Motion for summary judgment should be denied as to Count III;

-   Motion to dismiss should be denied as to Count IV; and

-   Motion to dismiss should be denied as to Count V.[1]

It is further recommended that the motion to dismiss filed by Defendants Interim

---

[1]  Count VI of the Complaint is not advanced against any CCCF Defendant.

Healthcare, Inc., and Nurses Halbrook, John and Jane Doe [ECF No. 16] should be granted in part and denied in part:

- Motion to dismiss should be denied as to Count I;

- Motion to dismiss should be granted as to Count III for failure to state a claim against these Defendants; and

- Motion to dismiss should be denied as to Count VI.[2]

It is further recommended that the motion to dismiss filed by Defendant Moran [ECF No. 18] should be granted in part and denied in part:

- Motion to dismiss should be denied as to Count I;

- Motion to dismiss should be granted as to Count III for failure to state a claim against this Defendant;

- Motion to dismiss should be denied as to Count V; and

- Motion to dismiss should be denied as to Count VI.[3]

It is further recommended that Plaintiff be directed to file a separate Certificate of Merit as to each Defendant against whom he brings a medical malpractice claim in accordance with Pennsylvania Rule of Civil Procedure 1042.[4]

_____

[2] Counts II and IV are not advanced against the Interim Healthcare Defendants.

[3] Counts II and IV are not advanced against Defendant Moran.

[4] To summarize, this Court recommends that:

Count I remains against the Interim Healthcare Defendants and Defendant Moran, but should be dismissed against the CCCF Defendants for failure to allege personal involvement;

Count II should be dismissed as against all Defendants for failure to state a claim;

Count III remains against the named CCCF Defendants, but should be dismissed against the Interim Healthcare Defendants and Defendant Moran for failure to allege their personal involvement; and

2

## II.    REPORT

### A.  Relevant Procedural History

Plaintiff, formerly a pretrial detainee confined at the Crawford County Correctional Facility in Meadville, Pennsylvania, filed this civil rights action on November 18, 2010.  In his counseled complaint, Plaintiff alleges that Defendants violated his constitutional rights in several ways.

Named as Defendants to this action are:  Crawford County Correctional Facility (hereinafter referred to as "CCCF"); Warden Tim Lewis; Deputy Warden Kenneth Saulsbery; Correctional Officer Schrekengost; Lt. Shinko; Interim Healthcare of Erie; Nurse Deanna Halbrook, Nurses John and Jane Doe; Morris Waid, Jack Preston and Sherman Allen, Commissioners of Crawford County; and Dr. Rick Moran.  Defendants Crawford County Correctional Facility, Wardens Lewis and Saulsbery, Officers Schrekengost and Shinko, and County Commissioners Waid, Preston and Allen are represented by the Shafer Law Firm.  These Defendants will be referred to hereinafter as the "Crawford County Defendants."  Defendants Interim Healthcare of Erie, Inc., Nurses Halbrook and Does are represented by Knox, McLaughlin, Gornall and Sennett, while Dr. Moran is represented by the Quinn Law Firm.

Plaintiff raises six counts in his complaint:

> I    § 1983 and Fourteenth Amendment violation – "Refusal and/or purposeful failure to provide prescribed medications, and to treat Plaintiff and to timely take Plaintiff to emergency department and to provide him with medications or treatment thereafter"
> Against Defendants CCCF, Wardens Lewis and Saulsbery, Interim Healthcare of Erie, Inc., Nurses Halbrook and Does, and Dr. Moran

Counts IV, V and VI should remain.

| II | "Supervisory Liability" |
|----|----|
| | Against Defendants Warden Lewis, and Commissioners Waid, Preston and Allen |
| III | § 1983 and Fourteenth Amendment – "Right to be free from conditions of confinement that are excessively harsh and/or punitive" |
| | Against all Defendants |
| IV | § 1983 and Fourth and Eighth Amendment Violations |
| | Against Defendant Schrekengost and "Wardens in supervisory liability" |
| V | Attorney Fees, Costs and Expenses under § 1988 |
| | Presumably against all Defendants |
| VI | Pendant State Tort Claims of Medical Malpractice |
| | Against Defendants Halbrook, Moran and Interim Healthcare of Erie |

ECF No. 1.

In response to the Complaint, all three sets of Defendants have filed motions to dismiss. See ECF Nos. 14, 16, and 18. The Crawford County Defendants have attached exhibits in support of their motion to dismiss and request that this Court convert their motion to dismiss into one for summary judgment where appropriate. At this initial stage of the litigation, no answers have been filed, no Case Management Conference has been held, and no discovery has been taken.

### B. Standards of Review

#### 1) Motion to dismiss pursuant to 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12

(b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957)). <u>See</u> <u>also</u> <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S.Ct. 1937 (2009) (specifically applying <u>Twombly</u> analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint.  <u>See</u> <u>California Pub. Employee Ret. Sys. v. The Chubb Corp.</u>, 394 F.3d 126, 143 (3d Cir. 2004) <u>citing</u> <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. <u>Twombly</u>, 550 U.S. at 555, <u>citing</u> <u>Papasan v. Allain</u>, 478 U.S.  265, 286 (1986). <u>See</u> <u>also</u> <u>McTernan v. City of York, Pennsylvania</u>, 577 F.3d 521, 531 (3d Cir. 2009) <u>quoting</u> <u>Iqbal</u>, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 556, <u>citing</u> 5 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." <u>Id</u>. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." <u>Smith v. Sullivan</u>, 2008 WL 482469, at *1 (D. Del.) <u>quoting</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." <u>Phillips</u>, 515 F.3d at 234, <u>quoting</u> <u>Twombly</u>, 550 U.S. at 556 n.3.

The Third Circuit subsequently expounded on the <u>Twombly/Iqbal/Phillips</u> line of cases:

To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.'

* * *

[A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to 'show' such an entitlement with its facts. As the Supreme Court instructed in Iqbal, '[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief.' This 'plausibility' requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (emphasis added) (internal citations omitted).

### 2) Motion for summary judgment

The parties have submitted evidence and exhibits. Therefore, this Court will convert parts of the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. See Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 517 (5th Cir.1998). ("When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment."); Greer v. Smith, 2003 WL 1090708, *1 (3d Cir. (Pa.) March 10, 2003) ("the District Court considered material outside of the pleadings and, therefore, should have converted the motion for dismissal to a summary judgment motion,

allowing the plaintiff an opportunity for appropriate discovery and a reasonable opportunity to present all material made pertinent to the motion.").

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986); <u>Andreoli v. Gates</u>, 482 F.3d 641, 647 (3d Cir. 2007); <u>UPMC Health System v. Metropolitan Life Ins. Co.</u>, 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); <u>Williams v. Borough of West Chester, Pa.</u>, 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. <u>Celotex</u>, 477 U.S. at 322. <u>See</u> <u>also</u> <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." <u>Garcia v. Kimmell</u>, 2010 WL 2089639, at * 1 (3d Cir. 2010) <u>quoting</u> <u>Podobnik v. U.S. Postal Serv.</u>, 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. <u>Anderson v.</u>

Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

### C.  Count I

All Defendants move to dismiss Count I of the Complaint arguing that Plaintiff has failed to state a claim of deliberate indifference under the Eighth and Fourteenth Amendments[5].

#### 1)  Plaintiff's Allegations

At Count I of the Complaint, Plaintiff alleges that during his initial intake at CCCF on November 18, 2008, he informed prison staff that he required prescription medications including Xanax and he provided those medications to staff. ECF No. 1, ¶ 38. Defendant Shinko accepted the medications saying "You'll never see these again." Id. at ¶ 40.

Plaintiff did not receive his prescription medications and began to suffer weakness, dizziness, staggering gait, and headache which worsened over the next few days. Plaintiff repeatedly requested his prescription medications, as well as medical care or treatment. Id. at ¶¶ 42, 45-48, 57. Nurse Halbrook responded to Plaintiff's request for hospitalization with a denial

---

[5] The Supreme Court has held that, while the Eighth Amendment protects prisoners confined as a result of a formal adjudication of their guilt, the Fourteenth Amendment Due Process Clause technically governs the constitutional rights of pretrial detainees. City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) ("The due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner."). See also Paulino v. Burlington County Jail, 2011 WL 2909056, at *2 (3d Cir. July 21, 2011) ("As a pretrial detainee, Paulino's claim is analyzed under the Due Process Clause of the Fourteenth Amendment, as opposed to the Eighth Amendment."); Natale v. Camden County Correctional Facility, 318 F.3d 575, 581-82 n.5 (3d Cir. 2003) ("[W]e do not decide whether the Due Process Clause provides additional protections to pretrial detainees beyond those provided by the Eighth Amendment to convicted prisoners.").

and the explanation that the only way to leave CCCF for the hospital was "in a body bag" or in cardiac arrest.  Id. at ¶¶ 43, 44.

On November 22, 2008, Plaintiff suffered a seizure, falling onto the floor and injuring his head, neck, shoulders and right arm.  Id. at ¶ 49.  Plaintiff was taken to Meadville Medical Center on this date.  Id. at  51.  Medical personnel at the hospital advised Plaintiff that the failure to provide Xanax from November 18th through the 22nd had caused the seizure.  Id. at ¶ 53. While at the hospital, Plaintiff was hydrated and stabilized.  Id. at ¶ l52.  The attending physician requested that Plaintiff be admitted overnight for further observation, but prison staff refused. Id. at ¶ 52.

Following Plaintiff's discharge from Meadville Medical Center and his re-confinement at CCCF, Plaintiff was in severe pain from the fall and in need of a physician's care as well as physical therapy.  Id. at ¶ 58.  Plaintiff received no Xanax, no physical therapy, and no examination by any physician.  Id. at ¶ 59.  Defendant Moran told Dr. Richards, Plaintiff's family physician, that Plaintiff was receiving Xanax following the November 22nd episode.  Id. at ¶ 59.

Plaintiff claims that he pled guilty to pending criminal charges because he was "so very apprehensive and unable to acquire medical treatment" and he was released from CCCF shortly thereafter.  Id. at ¶ 62.

Plaintiff claims that Defendants violated his Fourteenth Amendment rights by failing to:

- Provide him with prescription medications and pain relievers;

- Treat him for his complained symptoms before and after the seizure which was caused by refusing him his prescribed Xanax;

- Transport him to the hospital when the serious life-threatening symptoms arose;

- Follow up after hospitalization with appropriate and required care to assess and treat pain and assess the injury to his arm;

- Refer Plaintiff to Defendant Moran and/or an outside physician; and

- Provide Xanax after the seizure.

<u>Id</u>. at ¶ 69.

### 2) The Legal Standard

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." <u>West v. Keve</u>, 571 F.2d 158, 161 (3d Cir. 1978). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." <u>Monmouth County Corr'al. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." <u>Estelle</u>, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, <u>Durmer</u>, 991 F.2d at 68, or "persistent conduct in the face of resultant pain and risk of permanent injury" <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).

However, mere misdiagnosis or negligent treatment is not actionable under §1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. <u>Estelle</u>, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "Neglect, carelessness or malpractice is more properly the

subject of a tort action in the state courts." <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077, 1081 (3d Cir. 1976). <u>See</u> <u>also</u> <u>White</u>, 897 F.2d at 108 ("mere medical malpractice cannot give rise to a violation of the Eighth Amendment."). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights." <u>Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir. 1990) <u>citing</u> <u>Youngberg v. Romeo</u>, 457 U.S. 307, 322-23 (1982). <u>See</u> <u>also</u> <u>Powell v. Symons</u>, 2010 WL 1485682, at * 3 (M.D. Pa. 2010).

Deliberate indifference is generally not found when some level of medical care has been offered to the inmate. <u>Clark v. Doe</u>, 2000 WL 1522855, at *2 (E.D.Pa. 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). There is necessarily a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment. <u>United States ex rel. Walker v. Fayette County</u>, 599 F.2d 533, 575 n.2 (3d Cir. 1979). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir.1979) <u>quoting</u> <u>Bowring v. Goodwin</u>, 551 F.2d 44, 48 (4th Cir.1977).

### 3) Failure to State a Claim

Defendant Moran claims that Plaintiff has not pled that he had a "serious medical need."[6] Yet, a serious medical need may also arise "... when a delay in or denial of requested medical treatment causes an inmate to suffer a lifelong handicap or permanent loss." <u>Peterson v. Achebe</u>, 2007 WL 1381753, at * 3 (D.N.J. 2007) <u>citing</u> <u>Lanzaro</u>, 834 F.2d at 347. Plaintiff alleges he

---

[6]  No other Defendant argues that Plaintiff has failed to allege a serious medical need.

requested his prescription medications at the time of intake and repeatedly thereafter. This allegation is sufficient to state a "serious medical need."

Next, all Defendants argue that Plaintiff has failed to sufficiently allege the deliberate indifference prong of his claim. They contend that Plaintiff's own complaint outlines the medical care and treatment he received, including several nurse visits and treatment at the emergency department of Meadville Medical Center. So then, Defendants reason that Plaintiff has failed to state a constitutional claim because he clearly received medical care and his complaint revolves around the adequacy of that treatment. However, Defendants mischaracterize the key elements of Plaintiff's complaint – Plaintiff alleges, *inter alia*, that he was denied previously prescribed medications, which caused a seizure.[7] Deliberate indifference can be manifested by an intentional refusal to provide care, delayed medical treatment, and the denial of prescribed medical treatment. See <u>Durmer</u>, 991 F.2d 64; <u>Giles v. Kearney</u>, 571 F.3d 318, 330 (3d Cir. 2009) ("Deliberate indifference may be shown by intentionally denying or delaying medical care."). Plaintiff's factual allegations in this regard are sufficient to state a plausible claim for relief. Accordingly, the motion to dismiss for failure to state of claim at Count I should be denied.

### 4) *Respondeat Superior*

In their motion to dismiss, the CCCF Defendants (Wardens Lewis and Saulsbery, Correctional Officer Schrekengost, Lt. Shinko, and Commissioners Waid, Preston, and Allen) argue that Count I should be dismissed against all of them because Plaintiff has failed to sufficiently allege their personal involvement at Count I.

---

[7] Further, Plaintiff alleges that unnamed prison personnel refused to let him spend the night at the hospital and that he was never seen by a doctor at CCCF.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Ashcroft v. Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("In a § 1983 suit or a *Bivens* action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Oliver v. Beard, 358 Fed.Appx 297, 300 (3d Cir. 2009). It is well-settled law that *respondeat superior* is not an "appropriate theory" for asserting supervisory liability in a § 1983 civil rights action. See Monell v. Dep't of Social Serv., 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

In order for an individual defendant to be found liable in a civil rights action, the individual "must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). See also Rizzo v. Goode, 423 U.S. 362 (1976). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Thomas v. Independence Twp., 463 F.3d 285, 298 (3d Cir. 2006) quoting Rode, 845 F.2d at 1207.

Non-medical prison officials are generally not "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. […] If a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill, 372 F.3d at 236 quoting Durmer, 991 F.2d at 69. See also Foreman v. Bureau of Prisons, 2007 WL 108457, at *5 (3d Cir.). A non-medical supervisory official may only be held liable if there was "knowledge of 'malicious' and 'sadistic' medical mistreatment." Henderson v. Bussanich, 2006 WL 3761998, at *7 (M.D. Pa.), interpreting Spruill, 372 F.3d at 236-37.

The CCCF Defendants cannot be deliberately indifferent even if they failed to respond to Plaintiff's medical complaints so long as he was under the care of medical professionals. See Spruill, 37 F.3d at 256. The CCCF Defendants' reliance on the opinion of medical professionals even as Plaintiff expressed his dissatisfaction with his medical care and treatment does not show that Barone possessed "knowledge of malicious or sadistic medical mistreatment" so as to impose liability upon him. See Henderson, 2006 WL 3761998.

Accordingly, Count I against the CCCF Defendants should be dismissed.


### D. Count II

At Count II of the Complaint, Plaintiff alleges "Supervisory Liability" against Warden Lewis and Commissioners Waid, Preston and Allen.

Plaintiff alleges:

> 78. Defendants Lewis, Waid, Preston and Allen have a responsibility to devise, execute and implement policies and procedures to preserve the safety and health of the Facility inmates, these including procedures to provide adequate medical care and treatment to Plaintiff.

80.  Defendants Lewis, Waid, Preston and Allen authorized, ratified, and/or condoned the policies or customs of not providing Plaintiff's previously prescribed medications to him at his arrival at the Facility and thereafter, of not transporting or otherwise treating Plaintiff under his circumstances, of improperly educating and training employees, agents and officers to do as they have wrongfully done under these circumstances, and of not following up on his care responsibly after his return from the Meadville Medical Center on November 22, 2008.

81.  Alternatively, Lewis, Waid, Preston and Allen observed the serious threats of harm and their potential causes and failed to make corrective changes in policy as would be appropriate and would have assisted Plaintiff under the circumstances, including but not limited to permitting persons such as Plaintiff to be transported to the hospital and medicated according to their own doctors prescriptions.

ECF No. 1.

Plaintiff has failed to state a claim against these named Defendants as supervisory officials can only be held liable if they played an "affirmative part" in the complained of conduct.  Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Rode, 845 F.2d at 1195.

Although Plaintiff does not specifically articulate as much in either the Complaint or the opposition briefs, this claim reads like a Monell-type claim.  See Monell, 436 U.S. 658.  To state such a claim under § 1983, a plaintiff must allege that he was injured as a result of a policy or custom of an entity-defendant.  Id. at 691.

The law is clear that a Monell-type claim is only appropriate as to government-entity defendants and not individuals.  See Vacek v. Pennsylvania Judicial Conduct Board, 2010 WL 831000, at *7 n.8 (W.D. Pa.); Moriarty v. Rendell, 2009 WL 1458201, at *3 (M.D. Pa.) ("The Monell standard, however, applies to the liability of municipalities, not individuals.").  As Plaintiff has not named any entity-Defendant at this Count, it should be dismissed.

**E.  Count III**

Here, Plaintiff alleges that following his seizure and fall and his subsequent medical treatment at the Meadville Medical Center, he was confined in the "hole" for a week. Plaintiff claims this was done "vindictively and maliciously" and "without just purpose." ECF No. 1, ¶ 87. Plaintiff claims that all Defendants knew or should have known that this confinement was in violation of his constitutional rights. Specifically, he claims that the wardens and Commissioners are liable for failing to implement a policy prohibiting such a placement (Id. at ¶ ¶ 89-90), and Interim Healthcare and its nurses, the Wardens and the Commissioners, are liable for either acquiescing or participating in the decision. Id. at ¶¶ 91, 92.

### 1) Defendant Moran and the Interim Healthcare Defendants

These Defendants move to dismiss for failure to state a claim as Plaintiff has failed to allege their personal involvement at this Count. This Court agrees. Plaintiff has not alleged that Dr. Moran, Interim Healthcare, or Nurses Halbrook and Does played any affirmative part in the decision to confine Plaintiff in either the Restricted or Special Housing Units. These motions to dismiss should be granted.

### 2) CCCF Defendants

Due to the submission of several exhibits here, this Court must review this claim and the pending motion by CCCF Defendants under a summary judgment standard. Importantly, these parties disagree over whether Plaintiff was placed in the RHU (Restricted Housing Unit) as punishment or the SHU (Special Housing Unit) at his own request for his own protection. The exhibits and evidence provided by the parties creates more confusion on this issue. See ECF No. 15, page 12; ECF No. 34, page 7. This dispute represents a material issue of fact which precludes summary judgment at this Count against the CCCF Defendants at this early stage of the litigation.

**F. Count IV**

Plaintiff alleges that sometime after his return from Meadville Medical Center and while his arm was still in a sling, Defendant Schrekengost slammed a steel door on Plaintiff's injured arm "with maliciousness and purpose." ECF No. 1, ¶ 96. Further, Plaintiff alleges that Wardens Lewis and Saulsbery "have been made aware and have had actual knowledge of such physically vindictive conduct of … Schrekengost in the past pervious to the complained events (and since), of its substantial and dangerous propensities to the safety and health of the inmates and yet have acquiesced in same, doing nothing to correct her said contacts." Id. at ¶ 101.

Defendant Wardens move to dismiss this claim against them because it is grounded in supervisory liability which cannot support a § 1983 action. Defendants are wrong in this regard. Plaintiff has specifically alleged that the Wardens were personally involved in that they knew of Schrekengost's past vindictive conduct and acquiesced in it. This allegation is sufficient to support a claim against Defendants Wardens at this motion to dismiss stage. See Thomas, 463 F.3d at 298.

**F. Punitive Damages at Count V**

The Interim Healthcare Defendants, as well as Defendant Moran, move for dismissal of Plaintiff's request for punitive damages. Punitive damages may only be awarded in the context of § 1983 where the alleged conduct in question is proven to be motivated by evil motive or intent, or where it involves recklessness or callousness to the federally protected rights of others. Smith v. Wade, 461 U.S. 30, 36 (1983); Eichenlaub v. Township of Indiana, 214 Fed.Appx 218, 223 (3d Cir. 2007).

At this early stage of the litigation, Plaintiff has sufficiently pled that the actions of these Defendants were reckless or callous in regard to Plaintiff's constitutional rights. The motion to dismiss should be denied in this regard.

### G. Count VI - Negligence

At this Count, Plaintiff alleges that Defendants Interim Healthcare, Halbrook and Moran each had a duty to provide Plaintiff with "competent medical care" (ECF No. 1, ¶ 113) and that they breached this duty by failing to properly treat him and/or to transport him to an emergency room before his seizure and failing to provide required follow-up care after his discharge from the Meadville Medical Center. Id. at ¶ 114.

#### 1) Failure to file Certificate of Merit

Defendants Interim Healthcare, et al, and Moran move to dismiss this Count as legally insufficient due to Plaintiff's failure to comply with Pennsylvania's certificate of merit requirement, Pennsylvania Rule of Civil Procedure 1042.3.

Rule 1042.3, which this federal court is required to follow (see Liggon-Redding v. Estate of Sugarman, ___ F.3d ___, ___, 2011 WL 4552470, at *6 n.3 (3d Cir. Oct. 4, 2011)), requires that a certificate of merit be filed within sixty days of the filing of any complaint raising claims of professional malpractice. Specially, the Rule provides that "in any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff […] shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney […] that either:

> 1) An appropriate licensed professional supplied a written statement that there exists a reasonable probability that the defendant's conduct fell outside acceptable professional standards and that such conduct caused harm, or

2) The claim that defendant deviated from the standard of care is basely solely on allegations that other licensed professionals for whim this defiant is responsible, deviated from an acceptable professional standard, or

3) Expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Id. The Pennsylvania Rule goes on to provide that a separate certificate of merit shall be filed as to each licensed professional against whom a claim is asserted.

Plaintiff's certificate of merit is captioned as "Certificate of Merit as to Each Defendant," but implies that there is only a single written statement. A single written statement is not adequate to comply with Rule 1042.3, and so Plaintiff will be required to file two additional Certificates of Merit. Failure to do so may result in the dismissal of this claim.

### 2) Failure to State a Negligence Claim

Alternatively, Defendant Moran moves to dismiss this Count as Plaintiff has failed to set forth a *prima facie* claim of medical malpractice.

Under Pennsylvania law, a medical malpractice claim requires: 1) a duty owed by the physician to the Plaintiff; 2) a beach of that duty by the defendants; 3) a causal connection between the breach of duty and the resulting injury; and, 4) damages suffered by the Plaintiff that were a direct result of the injury or harm. See Neidig v. U.S., 2010 WL 1023937, at * 4(W.D. Pa.); Mitzelfelt v. Kamrin, 526 Pa. 54, 62 (1990).

Defendant Moran argues that Plaintiff has failed to allege facts that created a duty owed by him to Plaintiff or a breach of that duty. This Court disagrees. Plaintiff has pled that Dr. Moran was the only physician addressing inmate medical needs and prescribing medications at the time (ECF No. 1, ¶ 17), and despite previously issued prescriptions, repeated requests for those prescription medications, and repeated requests for medical treatment, Plaintiff did not receive his prescription medications or any examination by a physician. Plaintiff further alleges

that even after his seizure and hospitalization, he was never seen or examined by a physician during his confinement at CCCF. Id. at ¶ 60.

Plaintiff has sufficiently pled a negligence claim against Defendant Dr. Moran and the motion to dismiss should be denied in this regard.

## III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that that the motion to dismiss filed by Defendants Crawford County Correctional Facility, Wardens Lewis and Saulsbery, Correctional Officer Schrekengost, Lt. Shinko, and Commissioners Waid, Preston and Allen [ECF No. 14] (parts of which were converted into motion for summary judgment) should be granted in part and denied in part, to wit:

- Motion to dismiss should be granted as to Count I;

- Motion to dismiss should be granted as to Count II;

- Motion for summary judgment should be denied as to Count III;

- Motion to dismiss should be denied as to Count IV; and

- Motion to dismiss should be denied as to Count V.

It is further recommended that the motion to dismiss filed by Defendants Interim Healthcare, Inc., and Nurses Halbrook, John and Jane Doe [ECF No. 16] should be granted in part and denied in part:

- Motion to dismiss should be denied as to Count I;

- Motion to dismiss should be granted as to Count III for failure to state a claim against these Defendants; and

- Motion to dismiss should be denied as to Count VI.

It is further recommended that the motion to dismiss filed by Defendant Moran [ECF No. 18] should be granted in part and denied in part:

- Motion to dismiss should be denied as to Count I;

- Motion to dismiss should be granted as to Count III for failure to state a claim against this Defendant;

- Motion to dismiss should be denied as to Count V; and

- Motion to dismiss should be denied as to Count VI.

It is further recommended that Plaintiff be directed to file a separate Certificate of Merit as to each Defendant against whom he brings a medical malpractice claim in accordance with Pennsylvania Rule of Civil Procedure 1042.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: November 21, 2011